IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- BALTIMORE
'26 SEP 8 PM3:46

HD
Rcv'd by:

LYNETTE COOPER

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

HABC, et al

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. ABA 26 CV 3551
*(to be filled in by the Clerk's Office)*

Jury Trial: ■ Yes ☐ No
*(check one)*

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Lynette Cooper |
| Street Address | 600 Light Street, Apt 429 |
| City and County | Baltimore City |
| State and Zip Code | Maryland 21230 |
| Telephone Number | |
| E-mail Address | |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | HABC CEO Janet Abrahams |
| Job or Title (if known) | CEO |
| Street Address | 417 E. Fayette Street |
| City and County | Baltimore City |
| State and Zip Code | 21202 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | The City of Baltimore |
| Job or Title (if known) | |
| Street Address | 100 N. Holliday Street, Suite 101 |
| City and County | Baltimore City |
| State and Zip Code | Maryland 21202 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 3

| | |
|---|---|
| Name | Brandon M. Scott, Mayor |
| Job or Title (if known) | Mayor |
| Street Address | 100 N. Holliday Street, Suite 101 |
| City and County | Baltimore City |
| State and Zip Code | Maryland 21202 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 4

| | |
|---|---|
| Name | Cary Hansel Atty |
| Job or Title (if known) | Attorney |
| Street Address | 2514 N. Charles Street |
| City and County | Baltimore City |
| State and Zip Code | Maryland 21218 |
| Telephone Number | |
| E-mail Address (if known) | |

*(If there are more than four defendants, attach an additional page providing the same information for each additional defendant.)*

# B. Defendant(s)

Defendant No 5. Baltimore County Dept of Housing: Community Developement: Baltimore County Office of Law
105 West Chesapeake Avenue, Suite 201
Towson, Maryland 21204

Defendant No. 6. President Donald John Trump
1600 Pennsylvania Ave, N.W.
Washington, DC 20500

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

- [x] Federal question
- [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 U.S.C. 1331; 28 U.S.C 1343; 42 U.S.C. 1983
42 U.S.C. 3601 et seq.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* Lynette Cooper, is a citizen of the State of *(name)* Maryland.

b. If the plaintiff is a corporation

The plaintiff, *(name)* ______, is incorporated under the laws of the State of *(name)* ______, and has its principal place of business in the State of *(name)* ______.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* ____________________, is a citizen of the State of *(name)* ____________________. *Or* is a citizen of *(foreign nation)* ____________________.

b. If the defendant is a corporation

The defendant, *(name)* Housing Authority of Baltimore City, is incorporated under the laws of the State of *(name)* Maryland, and has its principal place of business in the State of *(name)* ____________________. *Or* is incorporated under the laws of *(foreign nation)* ____________________, and has its principal place of business in *(name)* ____________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

$11 million and Punitive Damages from each Defendants, in Official and Personal capcity.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

SEE ATTACH.

SEE ATTACH

## STATEMENT OF CLAIM

### I. JURISDICTION

1. Plaintiff brings this civil action arising under the Constitution and laws of the United States.

2. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law.

3. To the extent applicable, this Court also has jurisdiction under 28 U.S.C. § 1343 for claims arising under federal civil-rights laws.

4. Plaintiff seeks monetary damages and other relief authorized by law for injuries and violations described below.

### II. PARTIES

5. Defendant #1 is the City of Baltimore.

6. Defendant #2 is Brandon M. Scott, Mayor of Baltimore.

7. Defendant #3 is Janet Abrahams, Chief Executive Officer of the Housing Authority of Baltimore City (HABC).

8. Defendant #4 is the Department of Housing & Community Development/Baltimore County housing authority entity involved in Plaintiff's housing assistance and voucher.

9. Defendant #5 is Cary Hansel, attorney and founder of Hansel Law PC.

10. Defendant #6 is Donald J. Trump.

11. Plaintiff also alleges that other persons may have participated in, facilitated, or had knowledge of certain acts described in this Complaint. Plaintiff does not presently know the identity or role of every such person and requests discovery to identify them.

### III. GENERAL FACTS AND REPEATED INTERFERENCE

12. Plaintiff alleges that, over a period of years, Plaintiff experienced repeated interference with housing, medical and prescription records, financial records, communications, court documents, electronic devices, personal property, and other matters affecting Plaintiff's ability to exercise civil rights.

13. Plaintiff alleges that these acts were not limited to one isolated occurrence and that records, photographs, communications, medical documentation, financial records, and other exhibits support portions of these allegations.

14. Plaintiff relies upon the evidence already submitted to the Court and requests discovery concerning persons, communications, records, transactions, contracts, policies,

electronic activity, and other evidence necessary to establish the identity and responsibility of the persons involved.

IV. DEFENDANT #1 — CITY OF BALTIMORE — DEPARTMENT OF PUBLIC WORKS AND COMMERCIAL UTILITIES

15. Defendant #1, the City of Baltimore, operates the Department of Public Works ("DPW"), which is responsible for City public-works and water-related operations.

16. Plaintiff alleges that Commercial Utilities was a vendor or supplier that provided chemicals or chemical products for use by DPW. Plaintiff does not allege that Commercial Utilities was required to be physically present at every DPW job site where the chemicals were used.

17. Plaintiff alleges that the relevant issue requiring investigation is whether DPW authorized, received, stored, transported, distributed, handled, or used chemicals supplied by Commercial Utilities in connection with the work or conditions affecting Plaintiff.

18. Plaintiff alleges that hazardous substances were introduced, released, or otherwise became present in circumstances affecting Plaintiff. Plaintiff does not presently know the precise chemical composition, source, quantity, method of introduction, location of use, or identity of every person who handled or authorized the substances.

19. Plaintiff requests discovery concerning the City's DPW records and its relationship with Commercial Utilities, including contracts, purchase orders, invoices, chemical-supply records, safety data sheets, delivery records, work orders, job assignments, employee and contractor records, policies, procedures, communications, inspection records, complaints, and records identifying where and how the chemicals were used.

20. Plaintiff alleges that the evidence should establish whether chemicals supplied by Commercial Utilities were used by DPW, whether DPW personnel or contractors were involved, and whether the City had notice of any hazardous conditions or risks associated with the chemicals.

21. Plaintiff's sister, Melvinia Cooper, died on May 30, 2018. Plaintiff believes that environmental and water-related conditions are relevant to understanding circumstances surrounding her sister's illness and death.

22. Plaintiff alleges that the continuing conditions caused Plaintiff to be afraid to use the City water. Plaintiff requests appropriate testing and discovery to determine whether hazardous substances were present and, if so, their source and composition.

## V. DEFENDANT #1 — GAS INFRASTRUCTURE AND HAZARDOUS CONDITIONS

21. Plaintiff alleges that BGE-related utility work involving gas infrastructure occurred in circumstances Plaintiff observed and documented.

22. Plaintiff observed activity during early morning hours, including activity occurring before children went to school, and observed what Plaintiff believed to be burning, releasing, or venting into the atmosphere.

23. Plaintiff recorded sounds, timing, and other observations using a cellular telephone.

24. Plaintiff does not presently know the identity of every person performing the work or the exact source of the substances or emissions observed.

25. Plaintiff describes certain substances as appearing, based upon Plaintiff's observations and the severity of the effects experienced, to be potentially military-style or otherwise unusually hazardous. Plaintiff does not claim to know their chemical classification, composition, or source without testing.

26. Plaintiff requests discovery, environmental testing, utility records, work orders, contracts, permits, communications, and other evidence concerning these activities.

## VI. AERIAL AND ATMOSPHERIC OBSERVATIONS

27. Plaintiff observed drones or other objects at high altitude appearing to form patterns or a perimeter over an area.

28. Plaintiff also observed lower-atmospheric clouds, substances, or conditions that Plaintiff believed were associated in time with other utility or environmental activity.

29. Plaintiff recorded sounds and observations using a cellular telephone.

30. Plaintiff does not presently know the source, ownership, purpose, or operation of every object or substance observed.

31. Plaintiff requests discovery and, where appropriate, expert examination to determine whether these observations are connected to the other events alleged in this Complaint.

## VII. PHYSICAL, NEUROLOGICAL, AND NERVOUS-SYSTEM EFFECTS

32. Plaintiff alleges physical effects that Plaintiff attributes to exposure to hazardous substances and environmental conditions.

33. Plaintiff experienced pressure involving the skull and eye-socket area, pain involving bones and skin, elevated heart rate, and effects involving Plaintiff's neurological and nervous systems.

34. Plaintiff alleges that these effects interfered with Plaintiff's ability to work, sleep, communicate, maintain records, maintain housing, and prepare and submit legal documents.

35. Plaintiff possesses medical records and other documentation concerning these effects.

36. Plaintiff requests appropriate medical and expert evaluation to determine the nature, extent, and possible causes of the injuries alleged.

VIII. DEFENDANTS #1 AND #2 — CITY OPERATIONS AND RESPONSE

37. Plaintiff alleges that Defendants #1 and #2 had governmental responsibilities concerning City operations and services relevant to Plaintiff's complaints.

38. Plaintiff alleges that reports and complaints concerning hazardous conditions were made but that Plaintiff did not receive an adequate response.

39. Plaintiff requests discovery concerning complaints, reports, governmental responses, policies, supervision, contracts, vendors, and communications concerning the conditions reported by Plaintiff.

IX. DEFENDANT #2 — MEDICAL, MEDICATION, AND PERSONAL RECORDS

40. Plaintiff alleges that medical, medication, personal, and related records were interfered with or accessed without Plaintiff's authorization.

41. Plaintiff alleges that persons entered or accessed Plaintiff's property or information without authorization and that electronic communications were also interfered with.

42. Plaintiff identified Rodney Bethea and other persons as individuals whose conduct Plaintiff believes should be investigated.

43. Plaintiff alleges that interference with medical and prescription information affected Plaintiff's ability to obtain necessary medication and medical care.

44. Plaintiff requests discovery concerning access logs, electronic records, communications, pharmacy records, insurance records, and other information relevant to the alleged interference.

45. On December 17, 2025, Plaintiff experienced medication-related interference and adverse reactions, including skin irritation and hair loss.

46. Plaintiff alleges that Plaintiff was denied medication and, on another occasion, was required to pay twice for medication.

47. Plaintiff also encountered incorrect or disputed information identifying 4401 Chalet Court in connection with Plaintiff's records.

48. Plaintiff contacted medical providers, insurance personnel, and pharmacy personnel concerning these problems and alleges resulting physical, financial, and legal harm.

X. DEFENDANT #2 — ELECTRONIC RECORDS AND COMMUNICATIONS

49. Plaintiff alleges that multiple electronic devices and accounts were hacked, altered, interrupted, or otherwise interfered with by persons including Rodney Bethea and other unknown persons.

50. The interference impaired Plaintiff's ability to maintain and submit legal documents.

51. Plaintiff alleges that court-related information and other communications were affected.

52. Plaintiff requests discovery concerning account-access records, IP information, device logs, communications, electronic storage, and other evidence.

XI. DEFENDANT #3 — HOUSING CONDITIONS AND RELOCATION

53. Plaintiff alleges that HABC subjected Plaintiff to unsafe and hazardous housing conditions.

54. Plaintiff alleges that Plaintiff was exposed to conditions that caused physical, financial, emotional, neurological, and nervous-system effects.

55. Plaintiff alleges that Plaintiff was required to relocate because of the conditions.

56. Plaintiff alleges that Defendant #4, at the request of Defendants #1 and #2, caused or directed conditions in Unit T507 to be constructed or recreated substantially the same as those Plaintiff had experienced in Unit 615.

57. Plaintiff alleges that the conditions caused physical, financial, emotional, neurological, and nervous-system harm.

58. Plaintiff further alleges that the housing problems were followed by termination of Plaintiff's housing voucher.

XII. DEFENDANT #3 — HOUSING DOCUMENTS AND RELOCATION

59. Plaintiff alleges that disputed housing documents contained information concerning Plaintiff and Plaintiff's children that Plaintiff believes was inaccurate, altered, or otherwise improperly used.

60. Plaintiff alleges that Plaintiff was subjected to coercive circumstances concerning housing and relocation.

61. Plaintiff was moved from Baltimore City to Baltimore County under circumstances Plaintiff alleges were connected to the housing dispute.

62. Plaintiff alleges that Defendants had information concerning Plaintiff's disability and housing circumstances.

63. Plaintiff alleges resulting housing instability, financial hardship, physical harm, emotional distress, and interference with Plaintiff's ability to pursue legal remedies.

XIII. DEFENDANT #3 — PACER AND COURT DOCUMENTS

64. Plaintiff alleges that HABC employees entered Unit T507 during the relevant period.

65. Plaintiff alleges that information concerning Plaintiff's PACER account and court filings was accessed or obtained.

66. Plaintiff alleges that documents or information were subsequently returned, discarded, or thrown into the trash.

67. Plaintiff alleges that the interference prevented or impaired Plaintiff's ability to file documents electronically while Plaintiff was pursuing claims against Defendant #3.

XIV. DEFENDANT #4 — TERMINATION OF HOUSING VOUCHER

68. Plaintiff alleges that Defendant #4 terminated or caused the termination of Plaintiff's housing voucher in approximately October 2025.

69. Plaintiff alleges that Plaintiff was instructed to leave the housing office and wait for a telephone call.

70. Plaintiff alleges that the voucher was terminated without adequate written notice.

71. Plaintiff alleges that Plaintiff was not provided a meaningful opportunity for a hearing before the termination.

72. Plaintiff alleges that the termination resulted in homelessness, financial hardship, loss of housing stability, and other substantial harm.

XV. DEFENDANT #4 — TIMING INVOLVING MELVINIA COOPER

73. Plaintiff's sister, Melvinia Cooper, was hospitalized for approximately one month.

74. During the hospitalization, Plaintiff repeatedly traveled to Defendant #4 concerning Plaintiff's housing and voucher.

75. Melvinia Cooper was subsequently released from the hospital and returned home.

76. Plaintiff alleges that approximately two days after Melvinia Cooper returned home, Plaintiff's voucher was taken or terminated.

77. Plaintiff alleges that the timing caused substantial hardship and further loss of housing stability.

78. Plaintiff requests records concerning the decision-making, communications, case notes, and timing of the voucher termination.

XVI. STORAGE FACILITY AND PROPERTY INFORMATION

79. Plaintiff alleges that information concerning Plaintiff and Plaintiff's property was improperly accessed or used in connection with a storage facility.

80. Plaintiff alleges that an unauthorized attempt was made concerning Plaintiff's storage property or information.

81. Plaintiff alleges that hazardous substances or materials were also relevant to the circumstances surrounding the storage issue.

82. Plaintiff requests discovery concerning access records, surveillance, communications, contracts, and other records.

## XVII. DEFENDANT #5 — CARY HANSEL AND THE 2015 CASE

83. Plaintiff was represented by Defendant #5, Cary Hansel, in Plaintiff's earlier federal litigation.

84. Plaintiff alleges that Defendant #5 excluded Plaintiff from meaningful participation in important proceedings and did not provide Plaintiff with a complete copy of the settlement agreement.

85. Plaintiff was one of 19 victims involved in the matter.

86. Plaintiff alleges that the settlement was approximately $6 million collectively and included lifetime housing assistance or vouchers.

87. On November 4, 2016, Plaintiff received two checks totaling approximately $64,500.

88. Plaintiff alleges that five additional attorney names appeared on the checks.

89. Plaintiff does not presently know the full disposition of the settlement funds or the basis for the additional attorney names appearing on the checks.

90. Plaintiff has not received a complete copy of the settlement agreement despite requesting it.

91. Plaintiff alleges that subsequent conduct interfered with Plaintiff's efforts to enforce or understand the settlement.

92. Plaintiff alleges that in 2018 an unknown person appeared to impersonate or present themselves as a court-related person.

93. Plaintiff alleges that these circumstances deprived Plaintiff of meaningful ability to protect legal and financial interests.

94. Plaintiff alleges that Plaintiff's apartment was burglarized in 2019.

95. Plaintiff alleges that legal, medical, financial, and electronic information was accessed or taken.

96. Plaintiff also alleges continued interference with Plaintiff's telephone and electronic communications.

97. Plaintiff submitted a complaint to the Attorney Grievance Commission in May 2019 and alleges that the resulting response contained information Plaintiff believes was false or fabricated.

98. Plaintiff alleges that efforts to investigate the matter were themselves interfered with.

99. Plaintiff alleges surveillance, intimidation, or related conduct occurring from approximately 2016 forward.

100. In June or July 2019, Plaintiff observed an unknown person, identified only as a John Doe, outside Plaintiff's residence.

101. In January 2024, Plaintiff alleges that an unknown person appeared at Plaintiff's Baltimore County residence and presented circumstances Plaintiff believed were consistent with court impersonation.

102. Plaintiff alleges that these events created continuing privacy and security concerns.

103. Plaintiff received an email in July 2026 concerning Abigail Akyea and alleges that the communication is relevant to the matters described above.

XVIII. FINANCIAL RECORDS

104. Plaintiff alleges that bank records from approximately 2016 through 2023 contain alterations, discrepancies, or transactions that Plaintiff does not recognize or cannot explain.

105. Plaintiff alleges that the bank is in a position to explain the transactions and records and that relevant financial records have already been submitted to the Court.

106. Plaintiff alleges that a transaction exceeding $200 involving Troy, New York, in 2025 was stopped by the bank.

107. Plaintiff alleges that information contained in the bank records may identify or otherwise point to Janai Harrison in connection with certain financial activity. Plaintiff does not presently claim personal knowledge of the complete transaction history or the identity of every person involved.

108. Plaintiff requests discovery and authentication of the relevant bank records, including account-access records, transaction histories, electronic records, and communications.

DEFENDANTS #1, #2, AND #5 — MARCH 30, 2026 FINANCIAL INTERFERENCE

109. On March 30, 2026, Plaintiff alleges that a Cash App transaction involving Plaintiff's bank account was intercepted, prevented, or otherwise interfered with during an emergency.

110. Plaintiff alleges that Defendants #1, #2, and #5, and/or persons acting for or with them, may have participated in or facilitated the interference.

111. Plaintiff requests discovery concerning the transaction, account-access records, communications, device records, and persons with access to the transaction.

XX. SOCIAL SERVICES AND SOCIAL SECURITY RECORDS

112. In 2025, Plaintiff discovered information involving Social Services and multiple accounts or records, including an account identifying one child even though Plaintiff alleges Plaintiff had no child associated with that account.

113. Plaintiff alleges that these records contain information that requires verification and authentication.

114. In August 2026, Plaintiff encountered information concerning Abigail Akyea and an alleged Social Services-related account associated with Alexandria, Virginia, that Plaintiff believes may have used Plaintiff's identity or personal information.

115. Plaintiff alleges that Social Security or housing-related records may also contain information concerning benefits or housing associated with Abigail Akyea and circumstances connected to Defendant #5 after 2018.

116. Plaintiff alleges that these records raise identity, benefits, privacy, and public-record concerns.

117. Plaintiff requests discovery and authentication of all relevant Social Services, Social Security, housing, identity, and benefits records.

XXI. VEHICLE VANDALISM — DEFENDANTS #1, #2, AND #5

118. Plaintiff alleges repeated vehicle vandalism beginning in June 2018 and continuing to the present.

119. Plaintiff alleges that Defendants #1, #2, and #5, including persons such as Rodney Bethea, may have participated in, directed, facilitated, or failed to prevent conduct involving the vandalism.

120. Plaintiff has documented repeated incidents while preserving available evidence.

121. On March 17, 2026, Plaintiff discovered a substance in the vehicle coolant that Plaintiff believed to be hazardous.

122. Plaintiff photographed the condition and sought emergency medical treatment after experiencing effects that Plaintiff attributed to the substance.

123. Plaintiff has used the vehicle as transportation and, at times, as a place of safety and shelter.

124. Plaintiff alleges that continuing vehicle interference impaired Plaintiff's ability to travel, maintain housing, preserve property, and pursue legal remedies.

125. GEICO documented incidents involving Plaintiff's vehicles, and Plaintiff alleges that Plaintiff ultimately lost GEICO insurance after approximately nine years following repeated vandalism involving two vehicles.

126. Plaintiff alleges resulting property damage, financial loss, insurance consequences, physical effects, and interference with legal proceedings.

127. Plaintiff possesses photographs, insurance records, repair records, medical records, and other evidence supporting portions of these allegations, including a documented incident in August 2026.

XXII. VEHICLE TICKETING

128. Plaintiff alleges that City personnel or other actors issued improper or disputed parking or other vehicle-related tickets.

129. Plaintiff observed a Lime bicycle positioned next to Plaintiff's vehicle in circumstances Plaintiff believes were relevant to the ticketing issue.

130. Plaintiff does not presently know which person issued or caused the tickets or whether the conduct was connected to the other acts alleged.

131. Plaintiff requests discovery concerning citations, enforcement records, photographs, officer or employee records, and related communications.

XXIII. INTERFERENCE WITH COURT WORK

132. During 2026, Plaintiff received repeated calls or experienced interruptions that Plaintiff associates with Rodney Bethea, Abigail Akyea, or other persons.

133. Plaintiff alleges that these interruptions caused computers to shut down or otherwise interfered with Plaintiff's preparation and filing of more than 20 exhibits.

134. Plaintiff documented portions of the interruptions and resulting loss or disruption of documents.

135. Plaintiff alleges that similar interruptions occurred on multiple occasions while Plaintiff was attempting to complete court filings.

XXIV. COURT-LOOKING MAIL AND DOCUMENTS

136. In 2019, Plaintiff received mail that appeared to resemble court-related correspondence and that Plaintiff believed was fraudulent or misleading.

137. Plaintiff more recently received another document containing court-related symbols or appearance.

138. Plaintiff does not presently claim that every such document was fraudulent and requests authentication rather than assuming authenticity or fraud.

139. Plaintiff requests discovery concerning the source, mailing records, electronic origin, and authenticity of disputed documents.

XXV. INTERSTATE COMMUNICATIONS

140. During 2025, Plaintiff received calls from persons Plaintiff associates with Defendants #2, #3, #5, and #6.

141. Plaintiff alleges that communications originated from or involved multiple locations and caused Plaintiff concern about interference or intimidation.

142. Plaintiff believes that some communications may have had a connection to events Plaintiff associates with January 6-related matters, but Plaintiff does not claim personal knowledge sufficient to identify every person or connection.

143. Plaintiff requests discovery concerning telephone records, subscriber information, communications, electronic records, and the identities of the persons involved.

XXVI. 2024 ELECTION-RELATED COMMUNICATIONS — DEFENDANT #6

144. During the 2024 election period, Plaintiff received texts or voicemails that Plaintiff believed interfered with Plaintiff's participation in the election.

145. Plaintiff preserved communications that Plaintiff believes are relevant.

146. Plaintiff requests discovery to identify the sender, purpose, source, and relationship of the communications to any defendant.

XXVII. 2024 ELECTION-RELATED COMMUNICATIONS — DEFENDANT #2

147. During the 2024 election period, Plaintiff received texts concerning Plaintiff's support for a candidate opposing Defendant #2.

148. Plaintiff alleges that the communications appeared intended to interfere with, influence, or intimidate Plaintiff concerning political participation.

149. Plaintiff preserved relevant communications and requests discovery concerning their source and purpose.

XXVIII. ELECTRONIC AND BUSINESS INTERFERENCE

150. Plaintiff alleges repeated interference with electronic accounts, communications, business information, and personal records.

151. Plaintiff alleges that interference affected Plaintiff's ability to communicate with agencies, financial institutions, medical providers, attorneys, and the Court.

152. Plaintiff alleges that certain information was altered, deleted, withheld, or made inaccessible.

153. Plaintiff requests discovery concerning account logs, device records, communications, business records, and other electronic evidence.

XXIX. DEFENDANT #2 — OTHER INTERFERENCE WITH LEGAL REMEDIES

154. Plaintiff alleges that complaints concerning BGE, governmental agencies, and other matters were followed by conduct that interfered with Plaintiff's ability to pursue legal remedies.

155. Plaintiff alleges that Plaintiff repeatedly attempted to use lawful administrative and judicial procedures.

156. Plaintiff requests discovery concerning governmental responses, communications, records, and decision-making following Plaintiff's complaints.

XXX. NEIL MACK

157. Neil Mack was killed on May 29, 2023.

158. Plaintiff had previously made complaints concerning HABC, Defendant #3, and persons associated with MONSE/Safe Streets.

159. Plaintiff alleges that Defendant #2 may have been involved in or directed conduct relevant to the circumstances surrounding Mr. Mack's death.

160. Plaintiff does not possess complete personal knowledge concerning the circumstances of Mr. Mack's death and does not allege that any defendant is criminally responsible without evidence establishing such responsibility.

161. Plaintiff requests appropriate investigation and discovery concerning the relevant records and communications.

162. Plaintiff notes the timing of May 29, 2023, one day before the anniversary of Melvinia Cooper's death, as a circumstance Plaintiff believes warrants examination, without asserting that the dates alone establish a causal connection.

XXXI. MELVINIA COOPER — MEDICAL AND ENVIRONMENTAL RECORDS

163. Plaintiff alleges that environmental concerns were relevant to Melvinia Cooper's medical circumstances.

164. Plaintiff states that doctors asked family members when Plaintiff's sister had a kidney removed, causing concern and confusion within the family.

165. Plaintiff alleges that Melvinia Cooper was transferred to a Georgetown medical unit associated with transplant-related care.

166. Plaintiff possesses or seeks medical information relevant to these circumstances.

167. Plaintiff does not presently allege that a kidney was unlawfully removed, that organ trafficking occurred, or that any particular person committed such conduct.

168. Plaintiff requests that the relevant medical and environmental records be reviewed and authenticated so that the Court can determine what actually occurred.

XXXII. FINANCIAL RECORDS, PUBLIC RECORDS, AND MATTERS RAISED BY THE COURT

169. Plaintiff understands that prior Court proceedings raised concerns involving financial activity, individuals described as billionaires, and questions concerning Plaintiff's sister and medical circumstances.

170. Plaintiff does not claim to know the explanation for every such circumstance.

171. Plaintiff is aware that federal authorities have made public records concerning Jeffrey Epstein and related investigations available through official government releases.

172. Plaintiff understands that the appearance of a person's name in a public record does not by itself establish participation in wrongdoing.

173. Plaintiff requests that any records relied upon in this action be authenticated and that only records actually relevant to Plaintiff's claims be considered.

174. Plaintiff includes this information to address matters previously raised by the Court and to request appropriate examination of evidence rather than to assert unsupported conclusions.

XXXIII. DEFENDANT #6 — DONALD J. TRUMP

175. Plaintiff alleges that Defendant #6, Donald J. Trump, was not necessarily a hands-on participant in each act described in this Complaint. Plaintiff alleges instead that persons acting for, with, or in furtherance of interests associated with Defendant #6 may have carried out or facilitated certain acts directed against Plaintiff.

176. Plaintiff alleges that this conduct includes interference with Plaintiff's housing, medical and prescription records, financial records, communications, court documents, and other civil rights.

177. Plaintiff further alleges that persons Plaintiff identifies as associates or alleged participants in the conduct—including persons associated with Defendants #1, #2, and #5—engaged in repeated acts of interference, intimidation, stalking, record alteration, and obstruction while Plaintiff was attempting to pursue legal remedies.

178. Plaintiff alleges that some of these events occurred after Plaintiff reported or submitted information concerning the alleged violations to governmental agencies and courts.

179. Plaintiff does not claim personal knowledge of every communication or relationship among the persons involved. Plaintiff relies upon the records and exhibits

already submitted to the Court and seeks discovery concerning the identity, relationships, communications, financial transactions, instructions, and roles of persons who participated in or facilitated the alleged conduct.

180. Plaintiff alleges that Defendant #6's connection to these matters should be determined through the evidence and discovery rather than assumed from Plaintiff's allegations alone.

181. Plaintiff does not intend these allegations to state that every person associated with Defendant #6 participated in wrongdoing or that Defendant #6 personally committed every act alleged.

XXXIV. RACIAL DISCRIMINATION

182. Plaintiff alleges discrimination based upon race in connection with housing, governmental treatment, contractual rights, and other protected activities.

183. Plaintiff alleges that the treatment was intentional and/or resulted from policies, practices, or decisions that require discovery.

184. Plaintiff alleges that similarly situated persons were treated differently.

185. Plaintiff requests discovery concerning comparable individuals, decision-making, policies, communications, and records.

186. Plaintiff asserts racial-discrimination claims only to the extent supported by the facts and applicable federal law.

187. Plaintiff requests all relief authorized under applicable civil-rights and housing laws.

XXXV. SEX AND GENDER DISCRIMINATION

188. Plaintiff alleges discrimination based upon sex or gender in circumstances involving housing, legal rights, and governmental treatment.

189. Plaintiff requests discovery concerning similarly situated persons, decision-making, communications, policies, and treatment.

190. Plaintiff asserts these claims only to the extent supported by evidence and applicable law.

XXXVI. DISABILITY DISCRIMINATION

191. Plaintiff alleges that Defendants were aware, or should have been aware, of Plaintiff's disabilities and related limitations.

192. Plaintiff alleges that Plaintiff was denied equal access to housing, housing assistance, governmental services, and/or reasonable accommodation.

193. Plaintiff alleges that the denial or termination of housing assistance caused substantial harm.

194. Plaintiff alleges that Defendants failed to provide reasonable accommodation or meaningful consideration of Plaintiff's disability-related circumstances.

195. Plaintiff invokes, as applicable, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Fair Housing Act.

196. Plaintiff alleges that during December 2024, during the Christmas holiday period and while Plaintiff was attempting to complete legal documents, Plaintiff began experiencing computer interference that Plaintiff associated with Xfinity services. Plaintiff further alleges that an unauthorized person entered Plaintiff's mother's home and Plaintiff's vehicle during or around this period. Plaintiff does not presently know the identity of the person or persons responsible, whether the events were connected, or whether Defendant #6 personally directed or participated in those events.

197. Plaintiff requests discovery concerning disability records, accommodation requests, housing decisions, policies, communications, and governmental records. Defendant #6 is identified as **Donald J. Trump, President of the United States.** Plaintiff recognizes that Defendant #6 served as the 45th President from 2017–2021 and returned to office as the 47th President beginning January 20, 2025. The White House currently identifies him as the 45th and 47th President.

198. Plaintiff seeks all remedies available under applicable federal law.

XXXVII. MUNICIPAL AND GOVERNMENTAL RESPONSIBILITY

198. Plaintiff alleges that Defendant #1 may be responsible for conduct occurring through City departments, employees, agents, contractors, vendors, or policies to the extent federal law establishes municipal liability.

199. Plaintiff alleges that Commercial Utilities and BGE performed or were involved in utility-related work relevant to Plaintiff's allegations.

200. Plaintiff understands that a municipality is not automatically liable merely because a contractor, vendor, employee, or private person allegedly caused harm.

201. Plaintiff therefore alleges that discovery is necessary concerning municipal policies, customs, contracts, procurement, supervision, authorization, notice, complaints, training, oversight, and decisions by persons with final policymaking authority.

202. Plaintiff alleges that repeated conduct, if proven, may establish a municipal policy, custom, practice, or deliberate-indifference theory where the requirements of federal law are satisfied.

203. Plaintiff requests discovery necessary to determine whether the alleged conduct is fairly attributable to the City and whether it caused a deprivation of Plaintiff's federally protected rights.

XXXVIII. CONTINUING CONDUCT

204. Plaintiff alleges that some of the conduct described in this Complaint continued after earlier complaints and legal proceedings.

205. Plaintiff alleges that additional incidents occurred during 2026 while Plaintiff was preparing this action.

206. Correction: The Court dismissed a case without prejudice on August 10, 2026.

207. Plaintiff alleges that subsequent events and continuing conduct are relevant to the present claims and to Plaintiff's request for appropriate relief.

XXXIX. SERVICE AND PROCEDURAL STATUS

208. Plaintiff completed and submitted five summonses for service.

209. Plaintiff has received documentation or responses concerning Defendants #3 and #4.

210. Plaintiff has not received corresponding documentation establishing the status of service or response for Defendants #1, #2, and #5 in the same manner.

211. Plaintiff does not assume that the absence of documents means that service was not completed and requests that the Court's docket and Marshal records control.

212. The Court dismissed a case without prejudice on August 10, 2026.

213. Plaintiff states these procedural circumstances only to clarify the record and requests that the Court determine the status of service from the official docket and service records.

XL. EVIDENCE AND DISCOVERY

214. Plaintiff has submitted numerous exhibits supporting portions of the allegations, including medical, financial, housing, communications, photographs, electronic records, court documents, and other materials.

215. Plaintiff has preserved additional evidence that may require authentication, subpoena, expert examination, or discovery.

216. Plaintiff requests discovery from governmental entities, housing authorities, financial institutions, utilities, vendors, telecommunications providers, medical providers, insurers, and other persons or entities possessing relevant records.

217. Plaintiff requests electronically stored information, access logs, account records, contracts, work orders, service records, surveillance, communications, financial records, medical records, and other relevant evidence.

218. Plaintiff requests that unknown persons be identified through discovery where permitted by the Federal Rules of Civil Procedure.

219. Plaintiff further requests leave to amend when discovery establishes additional facts or identifies additional responsible parties, subject to the Court's rules and applicable law.

XLI. DAMAGES AND RELIEF REQUESTED

220. Plaintiff alleges physical injuries and effects involving Plaintiff's neurological and nervous systems.

221. Plaintiff alleges emotional distress, loss of housing, homelessness, financial losses, property damage, insurance losses, medical expenses, medication-related expenses, litigation-related losses, and other damages.

222. Plaintiff alleges loss of access to records, communications, housing assistance, financial resources, and legal remedies.

223. Plaintiff seeks compensatory damages in an amount to be determined by the evidence and applicable law.

224. Plaintiff seeks punitive damages against defendants where authorized by law and where the applicable legal standard is satisfied.

225. Plaintiff seeks declaratory and injunctive relief where authorized and appropriate.

226. Plaintiff seeks an order requiring preservation and production of relevant records and evidence.

227. Plaintiff requests discovery sufficient to determine the identity and responsibility of unknown actors.

228. Plaintiff requests any additional damages or relief established by the evidence and authorized by federal or state law.

229. Plaintiff requests that ALL DEFENDANTS be ordered to pay all court costs, allowable attorney fees, litigation expenses, service costs, discovery expenses, and other expenses associated with this case, to the extent authorized by law.

230. Plaintiff requests appointment of counsel. Plaintiff alleges that this matter is extraordinary and unusually complex because it involves multiple defendants, multiple governmental entities, housing issues, constitutional claims, disability and civil-rights issues, extensive records, financial records, electronic evidence, environmental

allegations, and numerous exhibits. Plaintiff requests appointment of an attorney pursuant to applicable federal law and the Court's standards for appointment of counsel.

231. Plaintiff requests that the Court consider the allegations and evidence under the applicable federal pleading standards and permit Plaintiff an opportunity to establish claims through discovery where the facts are presently within the possession or control of defendants or third parties.

232. Plaintiff requests such other and further relief as the Court determines to be just, proper, and authorized by law.

Lynette Coz

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. For any request for injunctive relief, explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

Plaintiff request monetary relief, as the named Defendants and accomplices continues to surveil, stalk, and interfere with legal proceedings. Interfere in personal business. Destruction of personal property. The Defendants and accomplice should be Ordered to Stay away from Plaintiff ; Family Members STOP USING Those Hazardous Chemicals.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 09/08, 2026.

Signature of Plaintiff: Lynette Cooper

Printed Name of Plaintiff: Lynette Cooper

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

### B. For Attorneys

Date of signing: ________, 20__.

Signature of Attorney ____________________

Printed Name of Attorney ____________________

Bar Number ____________________

Name of Law Firm ____________________

Address ____________________

Telephone Number ____________________

Email Address ____________________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LYNETTE COOPER *

*

v. Case No. ____________

*

HABC et al

*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, a copy of ________________________________

which was electronically filed in this case on ______________, was mailed via first class mail, postage prepaid, to HOUSING AUTHORITY of BALTIMORE CITY 417 E. FAYETTE STREET ______________.

09/08/2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429, Balto, MD 21230
Address

Email Address

410 513 4280
Telephone Number

Fax Number

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LYNETTE COOPER *

*

v. Case No. ____________

*

HABC et al

*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, a copy of ____________

______________________________

which was electronically filed in this case on ____________, was mailed via first class mail, postage prepaid, to The CITY of BALTIMORE/BALTIMORE CITY LAW DEPT.
100 N. HOLLIDAY STREET, RM 101
BALTIMORE, MARYLAND 21202.

09/08/2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429
Balto, MD 21230
Address

______________
Email Address

410 513 4280
Telephone Number

______________
Fax Number

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LYNETTE COOPER *

*

v. Case No. ________________

*

HABC et al

*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, a copy of ________________

________________________________________

which was electronically filed in this case on ________________, was mailed via first class mail, postage prepaid, to Mayor BRANDON M. SCOTT/BALTIMORE CITY LAW DEPT.
100 N. HOLLIDAY STREET, RM 101
BALTIMORE, MARYLAND 21202.

September 8, 2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429
Balto, MD 21230
Address

________________
Email Address

410 513 4280
Telephone Number

________________
Fax Number

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYNETTE COOPER *

*

v. * Case No. ____________

HABC et al *

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, a copy of ____________ which was electronically filed in this case on ____________, was mailed via first class mail, postage prepaid, to Baltimore County Dept of Housing & Community Development 105 West Cheaspeake Ave, Suit 201 Towson, Maryland 21204.

September 8, 2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429
Balto, MD 21230
Address

____________
Email Address

____________
Telephone Number

____________
Fax Number

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LYNETTE COOPER *

v. * Case No. ____________

HABC et al *

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, a copy of ____________

which was electronically filed in this case on ____________, was mailed via first class mail, postage prepaid, to Cary HANSEL ATTY, Founder of Hansel Law PC
2514 N. Charles Street
Baltimore, Maryland 21218.

September 8, 2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429
Balto, MD 21230
Address

____________
Email Address

410 513 4280
Telephone Number

____________
Fax Number

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LYNETTE COOPER *

*

v. Case No. ____________________

*

HABC,etal

*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, a copy of ________________

________________________________________________

which was electronically filed in this case on ____________________, was mailed via first class mail, postage prepaid, to President Donald John Trump
1600 Pennsylvania Avenue NW, Washington, DC 20500

________________________________________________.

September 9, 2026
Date

Lynette Cooper
Signature

Lynette Cooper
Printed Name and Bar Number

600 Light St, Apt 429
Balto, MD 21230
Address

____________________
Email Address

410 513 4280
Telephone Number

____________________
Fax Number